[Civ. No. 2257. Fifth Dist. Aug. 1, 1974.]

JESUS CHAVARRIA et al., Petitioners, v.
THE SUPERIOR COURT OF FRESNO COUNTY, Respondent;
BENAVIDES & BENAVIDES FARM LABOR AGENCY,
Real Party in Interest.

**COUNSEL**

Bernstein & Henry and John Vance Henry for Petitioners.

No appearance for Respondent.

L. Nelson Hayhurst for Real Party in Interest.

## OPINION

**FRANSON, J.**—This is a proceeding in mandamus to vacate the trial court's order staying the action on the ground of inconvenient forum pending the filing of suit in Texas. The sole issue is whether petitioners will be deprived of their remedy of double damages under Labor Code sections 970 and 972 if the action is tried in Texas. If so, the trial court abused its discretion in staying the action; if not, the order should stand.

Petitioners filed a class suit alleging: they and the class of approximately 35 persons whom they represent are residents of the Republic of Mexico. The defendants Benavides & Benavides Farm Labor Agency and Anderson-Clayton & Co., solicited petitioners in Texas for employment as gin laborers at Anderson-Clayton's place of business at Mendota, California. Defendants represented that employment would be available at $2.08 per hour, 12 hours per day, for about 6 weeks if petitioners would come to California but, contrary to these representations, defendants intended to use petitioners as standby labor only. In reliance on the representations, petitioners came to California. Each petitioner suffered a loss of wages and the cost of busfare in the sum of $1,091.97. Each petitioner also seeks double damages under Labor Code sections 970 and 972.[1]

Raul Benavides states by affidavit that he resides in Texas and does business as a labor agent in various locations in Texas under the name of Benavides & Benavides Farm Labor Agency. He states that he intends to call as witnesses at the trial nine of his employees in Texas who will testify concerning the alleged misrepresentations. In addition, Benavides asserts that another 22 persons residing in Texas and Mexico might also testify on his behalf. The trial court found that petitioners and defendants entered into their relationship in Texas and that all witnesses to the facts, with the possible exception of those that might be called by Anderson-Clayton, would be greatly inconvenienced if the action were prosecuted in California.

Where a trial court finds in the interest of substantial justice that an action should be heard in a forum outside this state, it may stay or

---

[1]Labor Code section 970 provides in part: "No person, . . . shall influence, persuade, or engage any person to change from one place to another in this State or from any place outside to any place within the State, or from any place within the State to any place outside, for the purpose of working in any branch of labor, through or by means of knowingly false representations, . . . concerning either: (a) The kind, character, or existence of such work; (b) The length of time such work will last, or the compensation therefor; . . ."

Section 972 states in part: ". . . any person, . . . who violates any provision of section 970 is liable to the party aggrieved, in a civil action, for double damages resulting from such misrepresentations. . . ."

dismiss the action on any conditions that may be just. (Code Civ. Proc., § 410.30.) This simply means that the court has discretion to decline to exercise its jurisdiction over a transitory cause of action when it believes that the action before it may be more appropriately and fairly tried elsewhere. (*Great Northern Ry. Co.* v. *Superior Court,* 12 Cal.App.3d 105, 108-109 [90 Cal.Rptr. 461]; *Leet* v. *Union Pac. R. R. Co.,* 25 Cal.2d 605, 609 [155 P.2d 42, 158 A.L.R. 1008].)

Petitioners contend that if they are required to prosecute the action in Texas they will be deprived of their remedy of double damages as set forth in Labor Code section 972. To answer this contention we must ascertain which law the Texas forum would choose to apply in deciding the case. Our research discloses that in determining the substantive rights of the parties in tort actions, Texas courts follow the common law and apply the law of the place where the cause of action arose. (*Marmon* v. *Mustang Aviation, Inc.* (Tex.) 430 S.W.2d 182, 185, fn. 3; *Garza* v. *Greyhound Lines, Inc.* (Tex.Civ.App.) 418 S.W.2d 595, 597-598.) This is considered to be the place of the injury rather than the place of the wrongful act or omission. (*El Paso & N. W. Ry. Co.* v. *McComas,* 36 Tex.Civ.App. 170 [81 S.W. 760, 761]; *Hearne* v. *Dow-Badische Chemical Company,* 224 F.Supp. 90, 96.) Although the alleged representations were made in Texas, petitioners' injury occurred only after they came to California and found that the promised work was unavailable. It was in California that the last event necessary to establish defendants' liability took place. (See Rest.2d Conflict of Laws, introductory note, p. 412; 16 Am.Jur.2d, Conflict of Laws, § 72, p. 113.)

Moreover, Texas considers the measure of damages to be a substantive matter controlled by the law of the state where the injury occurred. (*Corrosion Rectifying Co.* v. *Freeport Sulphur Co.,* 197 F.Supp. 291, 293; cf. *Western Union Telegraph Co.* v. *Smith* (Tex.Civ.App.) 188 S.W. 702, 703; *Seale* v. *Major Oil Company* (Tex.Civ.App.) 428 S.W.2d 867, 869.) "A question of damages pertains to the right, not to the remedy and is not governed by the law of the forum." (12 Tex.Jur.2d, Conflicts of Laws, § 14 (1960); see also *Corrosion Rectifying Co.* v. *Freeport Sulphur Co., supra,* 197 F.Supp. 291; Rest., Conflict of Laws, § 412.) Since petitioners' injury occurred in California, the courts of Texas should give effect to the double damages provision of Labor Code section 972.

Nor do we agree with petitioners' argument that the damages provided by section 972 constitute a "penalty" and will not be enforced by the Texas courts. "The question whether a statute of one state, which in some

aspects may be called penal, is a penal law, in the international sense, so that it cannot be enforced in the courts of another state, depends upon the question whether its purpose is to punish an offense against the public justice of the state, or to afford a private remedy to a person injured by the wrongful act. . . . The test . . . is not by what name the statute is called by the Legislature or the courts of the state in which it is passed, but whether it appears to the tribunal which is called upon to enforce it to be, in its essential character and effect, a punishment against the public, or a grant of a civil right to a private person." (*Huntington* v. *Attrill*, 146 U.S. 657, 673-674 [36 L.Ed. 1123, 1130, 13 S.Ct. 224, 230].) (See also *Bowles* v. *Angelo* (Tex.Civ.App.) 188 S.W.2d 691, 694; *Farmers & Merchants Trust Co.* v. *Madeira*, 261 Cal.App.2d 503, 508-510 [68 Cal. Rptr. 184].)

In determining whether a foreign remedy was applicable in a suit in New York, Justice Cardozo explained the doctrine enunciated in the *Huntington* case in this manner: "[T]he question is not whether the statute is penal in some sense. The question is whether it is penal within the rules of private international law. A statute penal in that sense is one that awards a penalty to the state, or to a public officer in its behalf, or to a member of the public, suing in the interest of the whole community to redress a public wrong. [Citations.] The purpose must be, not reparation to one aggrieved, but vindication of the public justice. . . ." (*Loucks* v. *Standard Oil Co.*, 224 N.Y. 99 [120 N.E. 198]; see also *Texaco, Inc.* v. *Vanden Bosche*, 242 Md. 334 [219 A.2d 80, 83]; *Tulsa Ready-Mix Con. Co.* v. *McMichael Concrete Co.* (Okla.) 495 P.2d 1279, 1281; *Terenzio* v. *Nelson*, 107 N.J. Super. 223 [258 A.2d 20]; Leflar, American Conflict of Law (2d ed.) § 88, p. 209.)

Texas recognizes the distinction between a statute that awards a penalty to the state and one that grants a civil remedy to a private person. In holding that the Minnesota usury statute was penal in nature, the Texas court observed, "The force of the argument is made doubly clear by the fact that the Minnesota statute gives the person who pays the usurious interest the right to recover the sum so paid but specifically provides 'that one-half of the amount so recovered shall be paid by the officer collecting the same into the treasury of the county where collected, for the use of common schools.' " (*McCans* v. *Brandtjen & Kluge* (Tex.Civ.App.) 179 S.W.2d 352 at p. 354.) Under California law it is recognized that Labor Code section 972 is purely civil in nature. (See *Collins* v. *Rocha*, 7 Cal.3d 232, 235 [102 Cal.Rptr. 1, 497 P.2d 225].)

Finally, the fact that Texas does not have a similar statute does not

mean that Labor Code section 972 will not be enforced by the Texas courts. As a matter of comity, a right created by the law of a sister state will be enforced in Texas unless it violates some fundamental principle of justice or conception of public morals; we find nothing in Texas law to suggest that section 972 is contrary to the public policy of Texas. (See *Castilleja* v. *Camero* (Tex.) 414 S.W.2d 424, 427; *State of California* v. *Copus* (Tex.) 309 S.W.2d 227, 232; see also *Loucks* v. *Standard Oil Co., supra,* 120 N.E. 198, 201.)

The writ is denied.

Brown (G. A.), P. J., and Gargano, J., concurred.